IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MISTY RENEE WEYER                                                      PLAINTIFF

V.                                    NO. 14-5361

CAROLYN W. COLVIN,
Acting Administrator of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Misty Renee Weyer, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her current application for SSI on November 4, 2011, alleging an inability to work since October 15, 2011, due to bipolar disorder, post traumatic stress disorder, migraine headaches, and seizure disorder. (Tr. 140-144). An administrative hearing was held on December 20, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 28-52).

By written decision dated July 19, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – depression, pseudo-seizure disorder, and cholecystitis status post operation. (Tr. 14).

However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) except that the claimant is able to perform simple tasks with simple instructions. She can have incidental contact with the public. She can have no exposure to heights, dangerous machinery or driving as part of her job.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform any of her past relevant work, but there were other jobs Plaintiff would be able to perform, such as housekeeping and production/assembly work. (Tr. 22-23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied that request on September 25, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and Plaintiff filed a reply brief, and the case is now ready for decision. (Docs. 13-15).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in his RFC determination and in the weight he afforded the opinion of Dr. Richard D. Back; 2) Whether the ALJ erred by not expressing Plaintiff's mental RFC in terms of work related function; 3) Whether the ALJ failed to comply with HALLEX; 4) Whether the ALJ erred in his assessments of severe impairments; and 5) Whether the ALJ considered the combined effects of Plaintiff's impairments. (Doc. 13).

#### A. Severe Impairments and Consideration of Combined Effects:

Plaintiff argues that the ALJ erred in not finding Plaintiff's obesity, migraines, degenerative disc disease, obsessive compulsive disorder, generalized anxiety disorder, borderline personality disorder, and dependent personality disorder to be severe impairments. Plaintiff also argues that the ALJ erred by not considering the combined effects of the non-severe impairments upon Plaintiff's RFC.

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis

standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet …it is also not a toothless standard.'" Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015)(quoting Kirby v. Astrue, 500 F.l3d 705, 708 (8th Cir. 2007).

While the ALJ did not find Plaintiff's obesity, migraines, degenerative disc disease, obsessive compulsive disorder, generalized anxiety disorder, borderline personality disorder, and dependent personality disorder were severe impairments during the relevant time period, the ALJ clearly stated in his decision that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. (Tr. 13). See Swartz v. Barnhart, 188 Fed.Appx. 361, 388 (6th Cir. 2006)(where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 at *12 (E.D. Mo. Mar. 5, 2012); see also 20 C.F.R. §416.945(a)(2)(in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments. …, including … impairments   that are not 'severe'"); §416.923 (ALJ must "consider the combined effect of all [the claimant's] impairment without regard to whether any such impairment, if considered separately, would be of sufficient severity"). Thus, the ALJ's finding that Plaintiff's impairments listed above were not "severe" does not constitute reversible error.

**B. Credibility:**

With respect to the ALJ's credibility analysis, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and

intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). The Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination:

Plaintiff argues that the ALJ erred in assigning "little weight" to Dr. Back's opinion, that the mental RFC as found by the ALJ references non-examining state agency physician opinions, which were based upon evidence not pertaining to the Plaintiff, and that the ALJ did not express Plaintiff's mental RFC in terms of work related function.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis

6

v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). The opinions of the treating physicians must also be supported by the record as a whole. See Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2004). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Andrews, 771 F.3d at 1102. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

In his decision, the ALJ noted that Plaintiff had been treated at Ozark Guidance Center (OGC), Mercy Medical Center, Washington Regional Medical Center (WRMC), Mercy Hospital Northwest, Northwest Medical Center, and the Community Clinic. (Tr. 16). Plaintiff first sought treatment at OGC on May 11, 2011, when she was diagnosed as follows:

Axis I:       Mood Disorder NOS

7

        PTSD
        Dissociative Disorder NOS

  Axis II:   Deferred

  Axis III:  None known

  Axis IV:  Problems with primary support, problems related to social environment, occupational problems, economic problems, problems related to legal system/crime

  Axis V:   43

(Tr. 186). In an OGC record dated February 8, 2012, it was reported that Plaintiff dropped out after one session and reported that she did not want to be in services there. (Tr. 935). Thereafter, on February 14, 2012, a Psychiatric Review Technique Report and Mental RFC Assessment were completed by non-examining consultant, Diane Kogut, Ph.D., who concluded that Plaintiff was capable of unskilled work. (Tr. 444-454, 458-460).

  The next mental evaluation was performed after the hearing held before the ALJ on March 12, 2013, by Dr. Back, Clinical Neuropsychologist, of Northwest Arkansas Psychological Group. (Tr. 936). At the evaluation, Plaintiff reported to Dr. Back that she was supposed to be on Depakote ER, prescribed by a doctor at the Community Clinic in November of 2012, but she did not have $400 a month to pay for it. (Tr. 937). It is noteworthy that Plaintiff was consistently non-compliant in taking her Depakote. (Tr. 274, 277, 279, 364, 365, 367, 931, 937). She reported that on a daily basis, she washed dishes, did the laundry, and swept the house. (Tr. 937-938). Dr. Back found that although there was a moderately apathetic tone, Plaintiff displayed no remarkable resistance or hostility toward the interview process, and was assessed to be adequately cooperative. (Tr. 939). He also found that she spoke clearly, her speech was logical and without remarkable "circumstantialities," and that she did present with bizarre or peculiar preoccupations, but denied experience of

thought withdrawal, insertion or control. (Tr. 939). Plaintiff also reported to Dr. Back that Depakote controlled her seizures and voices. (Tr. 939). Dr. Back diagnosed Plaintiff with obsessive compulsive disorder, generalized anxiety disorder, major depression, recurrent, moderate, borderline personality disorder, and dependent personality disorder, and gave her a GAF score of 45-55. (Tr. 943). Dr. Back concluded that Plaintiff's mental impairments interfered with her day to day adaptive functioning to a marked extent, and that she reported she could sweep, wash dishes, and do laundry without assistance, but that these tasks were not completed efficiently "as her obsessiveness prolongs the time it takes her to do them." (Tr. 943). Dr. Back concluded that Plaintiff's capacity to communicate and interact in a socially adequate manner was markedly impaired; that Plaintiff's capacity to communicate in an intelligible and effective manner was moderately impaired; that Plaintiff's capacity to cope with typical mental/cognitive demands of basic work-like tasks was mildly impaired; that Plaintiff's ability to attend and sustain concentration on basic tasks was mildly impaired; that Plaintiff's capacity to sustain persistence in completing tasks was mildly impaired; and that Plaintiff's capacity to complete work-like tasks within an acceptable timeframe was not impaired. (Tr. 943-944).

In his decision, the ALJ carefully and completely addressed Dr. Back's opinion, and concluded that it was more limiting than the objective medical evidence of record would support. (Tr. 20-21). He noted that although Dr. Back found Plaintiff had marked impairments in her capacity to communicate and interact in a socially adequate manner, the testimony and evidence showed Plaintiff had maintained a relationship with her boyfriend for some time, that she walked a friend's dog, and was able to shop. (Tr. 21). The ALJ also noted that although Dr. Back found Plaintiff to be irritable and apathetic, most of Plaintiff's

9

emergency department visits did not indicate any marked irritability or an inability to communicate intelligibly. The ALJ therefore gave little weight to Dr. Back's opinion.

The Court believes the ALJ was warranted in giving Dr. Back's opinion little weight. "It is true that opinions of specialists on issues within their areas of expertise are 'generally' entitled to more weight than the opinions of non-specialists." Guilliams v. Barnhart, 393 f.3d 796, 803 (8th Cir. 2005); Telin v. Astrue, No. 11-3129 ADM/AJB, 2012 WL 6194353 (D. Minn. Dec. 12, 2012). However, physician opinions that are internally inconsistent "are entitled to less deference than they would receive in the absence of inconsistencies." Guilliams, 393 F.3rd at 803. Although Dr. Back concluded that Plaintiff's mental impairments interfered with her day to day adaptive functioning to a marked extent, he also concluded that Plaintiff's capacity to sustain persistence in completing tasks was mildly impaired and that her capacity to complete work-like tasks within an acceptable timeframe was not impaired. (Tr. 943-944). Dr. Back also concluded that Plaintiff's capacity to communicate and interact in a socially adequate manner was markedly impaired. However, Plaintiff testified that she lived with a male friend, was a server at IHOP at some point after October of 2011, and was let go because she had a seizure, took her neighbor's dog for a walk, and on one occasion, was visiting a friend in Rogers when she suffered from abdominal pain. (Tr. 34, 35, 38, 47). In addition, the ALJ's RFC included the limitation that Plaintiff should have only incidental contact with the public.

Plaintiff testified that what kept her from working were seizures and migraine headaches. (Tr. 37). Plaintiff testified that when she had a migraine headache, she would go to the hospital and they would give her a Toradol shot. (Tr. 45). She also advised Dr. Back that Depakote controlled her seizures. (Tr. 939). "If an impairment can be controlled by

10

treatment or medication, it cannot be considered disabling." Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)(internal quotations and citation omitted). The ALJ properly considered Dr. Back's opinion and concluded that to the extent his opinion was consistent with the medical evidence of record and Plaintiff's testimony, it was assessed in his RFC determination. (Tr. 210).

With respect to Diane Kogut's opinion, Plaintiff argues that the ALJ's mental RFC references her opinion, which was based upon evidence not pertaining to Plaintiff.  At the hearing, the ALJ struck the evaluation performed on Plaintiff by Catherine Hubbard Adams, Ph.D., because a certain portion of the opinion was not about the Plaintiff. (Tr. 41). Plaintiff argues that Diane Kogut nevertheless referenced the excluded mental consultative examination. There is no indication that Dr. Kogut relied on the inaccurate job history contained in Dr. Adams' consultative examination report, and no indication that the ALJ unduly relied on the February 2012 findings of Dr. Kogut. Furthermore, the ALJ ordered another mental evaluation after receiving Dr. Kogut's opinion, and considered it thoroughly. Based upon the foregoing, and considering the record as a whole, the Court believes there is substantial evidence to support the ALJ's RFC determination and the weight he gave to Dr. Back's opinion.

### D.  Compliance with HALLEX:

Plaintiff briefly argues that the ALJ did not forward counsel's response to Dr. Back's proffer for completion, and did not discuss the response in the unfavorable decision as required by HALLEX. On April 5, 2013, counsel sent the ALJ a letter, enclosing a blank Medical Source Statement of Ability to Do Work Related Activities (Mental) (Form HA-1152-U3), and asking him to proffer it to Dr. Back for completion. (Tr. 177-180). The ALJ

did not mention such document in his opinion. Plaintiff argues that if a claimant objects to the proffered evidence, the ALJ is to make a formal ruling, either in the decision or by separate order, and if he addresses an objection in a separate order, he must provide the claimant and appointed representative, if any, with a copy of the order. HALLEX I-2-7-30, Addressing Comments Received.

The Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX. However, in Ellis v. Astrue, No. 4:07CV1031 AGF, 2008 WL 4449452 at *15-16 (E.D. MO. Sept. 25, 2008), the Court addressed this issue:

> While the Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX, other circuits have. The Ninth Circuit believes that HALLEX is an internal manual with no legal force. Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000)("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual.")(citing Schweiker v. Hansen, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)(per curiam)(holding that rules in claims promulgated for claims representatives do not bind the Social Security Administration)). The Fifth Circuit held in Newton v. Apfel, 209 F.3d 446 (5th Cir. 2000), that although HALLEX does not carry the authority of law, "'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required,'" and should prejudice result from a violation of an agency's internal rules, the result cannot stand. Id. at 459 (quoting Hall v. Schweiker, 660 F.3d 116, 119 (5th Cir. 1981)(footnote omitted).

Id. As the Court found in Ellis, this Court believes that the Eighth Circuit would hold that HALLEX does not have the force of law. Id. at *16. In addition, the form Plaintiff's counsel forwarded consists of a checkmark form, which the Eighth Circuit has held has little evidentiary value. See Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012)(holding that a conclusory checkbox form has little evidentiary value when it "cites no medical evidence, and provides little to no elaboration").

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 12th day of February, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE